600 A.2d 218

**Gary WARREN, Appellee,**

v.

**Kathleen J. RICKABAUGH, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 15, 1991.

Filed Dec. 12, 1991.

432

Joan Carey, Carlisle, for appellant.

Gary G. Warren, pro se.

Before CAVANAUGH, CIRILLO and BROSKY, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Cumberland County continuing the parents' shared legal custody of their children, Jessica Warren (born March 9, 1981) and Joshua Warren (born August 30, 1982) and transferring primary, physical custody from the mother to the father. We affirm in part and remand in part.

Kathleen J. Rickabaugh ("mother") and Gary Warren ("father") divorced in 1985. This is the sixth custody order regarding their two children that has been entered since their divorce. In order to understand the issues before this court it is necessary to first review the factual background of the six custody orders as it reflects a deterioration in the parent's ability to amicably resolve issues regarding their children.

The first order was entered on September 3, 1986 and granted shared legal custody to the mother and father with primary physical custody to the mother and liberal temporary physical custody to the father.

The second order, entered on June 16, 1988, continued primary physical custody with the mother with temporary

physical custody to the father. After the father relocated to Florida it became necessary for the trial court to specify the time periods when the children could visit him. This included eight weeks in the summer, a portion of the children's Christmas vacation, and the children's spring vacation. The trial court also arranged a schedule so that the father could speak to his children by telephone.

The third order was entered on August 28, 1989 in response to the father's petition for modification of custody. The order extended the father's temporary physical custody in the summer. The order also forbade either parent from harassing the other, and directed both parents to cooperate in making arrangements to permit the father to exercise his temporary physical custody rights. In addition, the order specified a schedule for telephone contact between the father and the children and permitted the children to take unaccompanied flights to Florida to visit him if there was no change of airplanes during the flight.

In response to the mother's threats to interfere with the father's temporary physical custody the trial court entered a fourth interim order on August 2, 1990. The court permitted the father to return the children to their mother at a later date. At the hearing prior to the fourth order the father also sought primary custody of the children. The trial court heard testimony from several witnesses in regard to his request. Police officers in the mother's community testified that they had been summoned to her home on several occasions in response to domestic disputes between herself and her fourth husband, Gerald Rickabaugh ("Rickabaugh"). Nevertheless, primary custody remained with the mother.

As a result of the father's continuing difficulty in telephoning and making travel arrangements with his children the court entered a fifth order on August 27, 1990 again detailing a schedule for telephone contact and travel arrangements. Less than a year later another order was entered by the trial court.

In February of 1991 the mother and children moved out of the marital home and into a women's shelter as a result of the escalating disputes between the mother and Rickabaugh. During most of their two week stay at the shelter the father was unable to locate his children. The mother and children then moved into an apartment on the Middletown campus of The Pennsylvania State University. This change of residence forced the children to change schools in the middle of the academic year. Consequently, the father again petitioned for primary custody.

In the sixth custody order,[1] the order before us on appeal, the court continued the shared legal custody of the children,

1. The order of the trial court stated that the mother shall have temporary physical custody of the children on the following schedule:
(a) From [March 26, 1991] until the first Saturday after the children are out of school for the current school year.
(b) From Saturday, August 3, 1991, until Sunday, August 18, 1991.
(c) From December 27th each year to the last day of the children's Christmas vacation.
(d) At such other times as the parties may agree. Rickabaugh shall be allowed to be with the children when she is in the area in which Warren lives. She may notify Warren by phone or letter when such circumstances will occur. When mother exercises temporary physical custody under this subparagraph, she shall be allowed to have children at all times when they are not in school.
(e) For a period during each summer school vacation period starting with the summer of 1992, commencing on the second Saturday after the children are out of school and ending nine weeks later. For one full week after this period has started and before it ends, father shall have the option of having the children if he is on vacation. Father shall advise mother of his vacation dates at the start of each summer period. If father does not exercise this option, mother shall return the children to him eight weeks after she receives them.
(4) When father has the children, he shall have them available in his home each Wednesday at 9:00 p.m., at which time mother may call for a phone conversation lasting, at her option, up to one-half hour. During the time the children are with the mother, she shall have the children available each Wednesday at 9:00 p.m. for a similar call by the father. If a parent is not going to be home for these scheduled phone calls, that parent shall call the other parent at least one day before the scheduled phone call and allow the children to talk to the other parent at that time.
(5) Father shall arrange and pay for transportation to take the children to his home in Florida at the end of the current school year. *He shall split the cost of transportation of the children coming to Pennsylvania at any other time they come here pursuant to the terms of this court order.*
(emphasis added).

but transferred primary physical custody to the father and temporary physical custody to the mother. In short, the father now has the same custody schedule as the mother did under the previous order. Also, the trial court made special arrangements to enable the children to complete this school year in Pennsylvania. In response to the new custody arrangement, the mother filed this timely appeal.

The mother presents two issues for our review: (1) whether the trial court erred in changing primary physical custody from their mother to their father; and (2) whether the court abused its discretion by unduly burdening the mother's visitation rights by requiring her to pay half of the children's travel expenses.

■ In custody disputes the controlling question and paramount concern of the court is the best interests of the child; all other considerations are deemed subordinate to the child's physical, intellectual, moral, and spiritual well-being. *Gerber v. Gerber*, 337 Pa.Super. 580, 487 A.2d 413 (1985). In *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984), the Pennsylvania Supreme Court set forth the appropriate standard of appellate review in custody cases:

> [A]n appellate court is not bound by deductions or inferences made by a trial court from the facts found; ... nor must a reviewing court accept a finding which has no competent evidence to support it. However ... this broader power of review was never intended to mean that an appellate court is free to nullify the factfinding function of the hearing judge ... [but, instead, the appellate court is to remain] within the proper bounds of its review and [base a decision] upon its own independent deductions and inferences from the facts as found by the hearing judge.

*Id.*, 505 A.2d at 236, 478 A.2d at 805–06 (citation omitted); *see also Karis v. Karis*, 518 Pa. 601, 544 A.2d 1328 (1988) (an appellate court is empowered to determine whether the

trial court's incontrovertible factual findings support the trial court's legal conclusions, but may not interfere with those conclusions unless they are unreasonable in light of the trial court's factual findings); *Lombardo v. Lombardo,* 515 Pa. 139, 527 A.2d 525 (1987) (a broad or searching appellate review is proper and necessary in custody matters to insure that the focus of the trial court is the best interests of the child).

█ With respect to the transfer of primary custody to the father, our review of the record reveals that the trial court's decision was the result of a careful analysis of the law and the facts of this case. The trial court determined that the best interests of the children at this time lie primarily in providing a stable environment for them. The children, Jessica and Joshua, are at an age when continued disruptions at home and at school will only create serious problems. We are satisfied, as was the trial court, that the children will have a more stable environment living with their father for he has been a consistently positive force in their lives. We conclude that the trial court's findings regarding the awarding of custody to the father are supported by competent evidence. *Schwarcz v. Schwarcz,* 378 Pa.Super. 170, 548 A.2d 556 (1988).

█ In its opinion the trial court did not address the mother's second issue, the division of the travel expenses of the children pursuant to the custody order. Consequently, we are unable to review the issue. The trial court must "... provide us with a complete record and a comprehensive opinion which contains a thorough analysis of the record and specific reasons for its ultimate decision." *Id.,* 378 Pa.Superior Ct. at 190, 548 A.2d at 566 (quoting *Cady v. Weber,* 317 Pa.Super. 481, 464 A.2d 423 (1983)). *See* Pa. R.C.P. No. 1915.10—Explanatory Note—1981. Therefore, we remand this portion of the order to the trial court so it may place its rationale for dividing the travel expenses on the record for our review.

Order affirmed in part, and remanded in part. Jurisdiction retained.