**Tucker v. Tucker**

C.P. of Lawrence County, no. 10058 of 1996, C.A.

*Allen L. Palmer,* for plaintiff.
*Jean K. Perkins,* for defendant.

MOTTO, *J.,* February 3, 1998—Before the court for disposition are the competing claims of the parties for custody of their minor children, Haldis Tucker III, age 9, and John D. Tucker, age 6.

Mr. and Mrs. Tucker married on July 28, 1984, and separated in March of 1995. The two children who are the subject of these proceedings were the only children born to the marriage. Neither party has any other children.

Prior to separation, Mrs. Tucker was the primary caregiver of the children. Although both parties were employed during the marriage on a full-time basis, Mrs. Tucker worked a night turn shift which allowed her to be with the children during the day and in the evening hours. Both parties are now employed on a full-time basis and work day turn shifts.

Shortly after the initiation of this proceeding, the parties entered into an agreement at a conciliation conference held on July 31, 1995. That agreement resulted in a consent order dated October 13, 1995, by which Mrs. Tucker was awarded primary physical custody of the children, with Mr. Tucker to have partial custody each week from Sunday at 1 p.m. until Tuesday at 6 p.m.

On February 12, 1996, Mr. Tucker filed a motion to modify the October 13, 1995 custody order.

On May 31, 1996, Mrs. Tucker filed a petition to restrict visitation, alleging sexual abuse of the minor children by Mr. Tucker. Mrs. Tucker's petition was dismissed by order dated June 28, 1996, whereby President Judge Glenn McCracken Jr. found insufficient proof under the least of burdens of proof that Mr. Tucker did anything to support the petition to restrict visitation. A temporary order dated May 31, 1996, temporarily restricting visitation, was vacated by the June 28, 1996 order and the parties were directed to continue to abide by the terms of the October 13, 1995 custody order.

The parties have, in fact, continued to abide by the terms of the October 13, 1995 order to the present, with some modification for summer visitation relative to the summer of 1997.

Because of difficulties that the oldest child, Haldis, was experiencing in the third grade, including difficulty concentrating and focusing on schoolwork and written testing procedures, the principal of the school recommended that Haldis be tested for Attention Deficit Hyperactivity Disorder. Mr. Tucker was resistant to having Haldis tested for ADHD. The court, at the request of Mrs. Tucker, ordered Haldis to be tested for ADHD by psychologist Michael Stern Ph.D. Dr. Stern diagnosed Haldis as having ADHD and recommended a

course of treatment. Mr. Tucker has strongly opposed Haldis being treated in any fashion for ADHD. However, such treatment has been recommended by school officials, Dr. Michael Stern and psychologist Cathy Clover, who had been appointed to prepare a psychological/custody evaluation for the court relative to these proceedings, Children's Hospital of Pittsburgh and Tod Children's Hospital of Youngstown, Ohio.

Haldis' best interests would be served by engaging in a course of treatment for ADHD. Haldis has a range of intelligence from very bright to superior; however, he has great difficulty focusing on his schoolwork. He is easily distracted and often does not complete or take seriously written tests or assignments. Haldis has also engaged in disruptive behavior in school.

Upon evaluation by Children's Hospital of Pittsburgh and Tod Children's Hospital of Youngstown, Ohio, counseling was recommended to address ADHD. Mrs. Tucker has filed a motion to compel compliance with the medical recommendations made by Dr. Stern. Dr. Stern's recommendations include a combination of counseling and stimulant medication to be administered with the support of both parents. Counseling of the children was occurring at Daystar Counseling from June 1995 to February 1997, but was terminated by court order due to conflicts that occurred between Mr. Tucker and Daystar which resulted in Daystar electing to withdraw from the case.

The relationship between Mr. and Mrs. Tucker since separation has remained extremely hostile. Mrs. Tucker consistently maintained a conviction in her mind that Mr. Tucker sexually abused one or both of the children. However, there exists no proof of any sexual abuse by Mr. Tucker. The opinion of the court-appointed psychologist, Cathy Clover, was that Mr. Tucker did not

sexually abuse either child. Neither parent is supportive of the relationship of the children to the other parent. Mr. and Mrs. Tucker have a complete inability to communicate with each other relative to the needs and welfare of the children.

Putting aside the dispute between the parties relative to the need for treatment for ADHD, both parents exhibit appropriate love and concern for the children. The children in turn exhibit an appropriate degree of love for each parent and are firmly bonded to each parent. Both parents display an active interest in the children's schoolwork and extracurricular activities.

The younger child, John, suffers from hydrencephalus, having spastic dysplasia in one leg, which limits his strength. He displays an obvious disability, which requires intense therapy. Both parents have followed the therapy regime in each of their respective households. Accordingly, the court concludes that both parents demonstrate an equal concern for health issues affecting the children, except for Mr. Tucker's refusal to acknowledge the need of the child Haldis for treatment for ADHD.

Mrs. Tucker lives with her mother in a sizable home where there are adequate living accommodations for herself, her mother and the children. Mr. Tucker resides in what was the marital home with a paramour.

The central issue in a custody contest between parents is whether the best interests of the children lie in granting custody to one parent or the other. The best interests of the children are the paramount consideration. *Commonwealth ex rel. Robinson by Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984). The best interests of the children for custody purposes when two parents are involved are evaluated on a scale initially weighted equally as to each parent; when the scale is tipped

in favor of one of the parents, the other must come forward with evidence to reverse the balance. *Sawko v. Sawko,* 425 Pa. Super. 450, 625 A.2d 692 (1993). See also, *Boylan v. Boylan,* 395 Pa. Super. 280, 577 A.2d 218 (1990), *appeal denied,* 527 Pa. Super. 627, 592 A.2d 1295 (1991).

The court here concludes that the best interests of the children require that primary physical custody be awarded to Mrs. Tucker.

Mrs. Tucker had been the primary caretaker of the children prior to separation. Since separation, she has continued to be the primary caretaker, with primary physical custody having been awarded to her by agreement of the parties made at the July 31, 1995 conciliation conference as that agreement was specifically set forth in the consent order dated October 13, 1995. Although Mrs. Tucker's conviction that Mr. Tucker engaged in sexual abuse of the children has been a concern, it appears to the court that she has accepted the fact that there is no substantiation of her belief by any expert and has not recently pursued any allegation that Mr. Tucker was guilty of sexual abuse in the custody hearings held on Mr. Tucker's motion to modify. The court-appointed psychologist, Cathy Clover, recommended that primary physical custody be awarded to Mr. Tucker based primarily on a concern for Mrs. Tucker's conviction that Mr. Tucker was guilty of sexual abuse and that Mrs. Tucker would therefore continue to undermine the relationship between the children and Mr. Tucker. However, the facts found by the court as a result of the custody hearing do not indicate that Mrs. Tucker is presently engaging in any conduct that would undermine the relationship between the children and Mr. Tucker and, therefore, the factual basis for the conclusion of the court-appointed evaluator does not cur-

rently exist. To the extent that Mrs. Tucker may continue to harbor ill feelings towards Mr. Tucker, the court cannot accept such fact as a basis for awarding primary physical custody to Mr. Tucker, as both parties have expressed ill feelings toward the other. Acrimony between the parties exists in each parent in his and her attitude toward the other. Considering the difficulties the children have had in dealing with parents who each express hostility toward the other, and with Haldis having ADHD and John having a serious physical disability, Mrs. Tucker has done an acceptable job of providing for the needs and welfare of the children. Mrs. Tucker has shown herself to be attentive to the welfare of the children, provides a suitable home for them, is concerned about their schoolwork, stays in contact with the school and monitors the progress of the children, and ensures their participation in extracurricular activities and religious upbringing.

In *Wiskoski v. Wiskoski,* 427 Pa. Super. 531, 629 A.2d 996 (1993), the Superior Court held that where both parents are otherwise fit, one parent's role as the child's primary caretaker may be given weight as a determining factor in a custody determination. See also, *Gerber v. Gerber,* 337 Pa. Super. 580, 487 A.2d 413 (1985); *Gonzalez v. Gonzalez,* 337 Pa. Super. 1, 486 A.2d 449 (1984); *Hartman v. Hartman,* 328 Pa. Super. 154, 476 A.2d 938 (1984).

Considering the level of acrimony between the parties, the ADHD that is experienced by the child Haldis and the serious physical disability experienced by the child John, the children have done well in difficult circumstances. Haldis has been able to achieve A's and B's, despite being diagnosed with ADHD, and John's medical needs have been adequately met.

The need of the child Haldis for treatment for ADHD has been neglected. Mr. Tucker is responsible for this neglect as Mrs. Tucker has actively attempted to secure this treatment for Haldis. The need for treatment for ADHD has been specifically recommended or suggested by the school officials, Dr. Michael Stern, psychologist Cathy Clover, Daystar psychologists, Tod Children's Hospital of Youngstown, Ohio, and Children's Hospital of Pittsburgh, Pennsylvania. Mr. Tucker's refusal to accept the recommendations of the professionals in this regard is unreasonable, especially since he has never allowed any treatment to be attempted, which would indicate whether or not treatment would produce desired results.

It is well-settled that the best interests doctrine encompasses the physical well-being of the child. See generally, *Warren v. Rickabaugh,* 410 Pa. Super. 431, 600 A.2d 218 (1991); *McMillen v. McMillen,* 529 Pa. 198, 602 A.2d 845 (1992); *Andrews v. Andrews,* 411 Pa. Super. 286, 601 A.2d 352 (1991). It is clear that if primary physical custody were awarded to Mr. Tucker, Haldis could never successfully receive treatment for ADHD. Since Mr. Tucker does not accept the fact that Haldis needs such treatment, he cannot be counted upon to render medication or to be supportive in counseling efforts. On the other hand, if primary physical custody were left with Mrs. Tucker, with the authority to pursue treatment, then all indications are that Haldis will receive the treatment that he needs. Thus, the best interests of Haldis will be served by awarding physical custody of him to Mrs. Tucker so that his physical and intellectual needs may be met and enable him to receive the treatment for ADHD through the efforts of Mrs. Tucker.

Although both parents have been attentive to the physical needs of John, primary physical custody of

John should be awarded to Mrs. Tucker because of her consistent role of primary caretaker of the children since their birth and because of the desirability of keeping siblings together. The strong policy of law is that, unless compelling reasons indicate otherwise, siblings should be raised together. *Cardamone v. Elshoff,* 442 Pa. Super. 263, 659 A.2d 575 (1995).

Neither party has advanced any argument that the existing partial custody schedule should be changed if Mrs. Tucker were to be awarded primary physical custody. Therefore, the court having concluded that Mrs. Tucker should be awarded primary physical custody, the court will not consider modifying the existing partial custody schedule of Mr. Tucker, except upon motion of a party. This opinion shall be accompanied by a comprehensive custody order setting forth the custody and partial custody rights of the parties.

## ORDER

And now, February 3, 1998, following the completion of hearings held on the defendant's motion to modify the custody order of August 13, 1995, it is ordered and decreed as follows:

(1) The plaintiff-Mother and the defendant-Father shall have shared legal custody of the children, Haldis Tucker III and John D. Tucker, provided, however, that Mother shall have the sole and exclusive authority to authorize any recommended treatment of Haldis Tucker III for Attention Deficit Hyperactivity Disorder, including medical treatment and counseling, psychological evaluation related thereto and to otherwise do any and all acts recommended by any health care professional secured by Mother to address the ADHD diagnosis relative to Haldis. Father shall fully cooperate relative

to any treatment program recommended for Haldis by any health care professional secured by Mother.

(2) Mother shall have primary physical custody of the children. Father shall have partial custody of the children each week beginning on Sunday at 1 p.m. until the following Tuesday at 6 p.m. Father shall transport the children to their schools on a timely basis and shall make appropriate arrangements for their transportation from their schools on a timely basis at the end of the school day on the Mondays and Tuesdays for which Father has partial custody rights.

(3) During the summer months when school is not in session, the partial custody rights set forth in the foregoing paragraph shall be suspended and, in lieu thereof, the custody of the children shall be shared, on a two-week rotating basis, with Father to have the first two weeks, commencing with the first Friday after the conclusion of the school term, and the parties alternating physical custody every two weeks thereafter until the commencement of the next school term, at which time the regular partial custody schedule shall resume.

(4) Father shall have custody of the children each Father's Day and Mother shall have custody of the children each Mother's Day, notwithstanding any other provision of this order.

(5) The parties shall share holidays in the following manner:

(A) Mother shall have custody of the children from 5 p.m. Christmas Eve until 1 p.m. Christmas Day.

(B) Father shall have custody of the children from 1 p.m. Christmas Day until 6 p.m. December 27.

(C) Mother shall have custody of the children each New Year's Day.

(D) In all odd-numbered years, Father shall have custody of the children for Independence Day and Thanksgiving Day, and Mother shall have custody of the children for Memorial Day and Labor Day. In all even-numbered years, Father shall have custody of the children for Memorial Day and Labor Day, and Mother shall have custody of the children for Independence Day and Thanksgiving Day.

(6) Holiday partial custody shall take precedence over any other provisions of this order for custody/partial custody. Unless otherwise set forth in this order, a holiday custody/partial custody period shall be from 9 a.m. until 6 p.m.

(7) Transportation of the children shall be divided between the parties, with the party surrendering custody to provide transportation to the home of the other.

(8) No party may remove the children from the jurisdiction of this court with the intent of changing the physical residence of either child without the written consent of the other party or an order of court.

(9) The terms and provisions of the appendix to custody order attached hereto are incorporated herein and the parties are directed to comply with said provisions.

(10) The parties are directed to fully cooperate with each other in fulfilling the requirements of this order and any other outstanding orders. Failure to do so may result in sanctions being imposed by the court upon the parties, including suspension of custody or partial custody and payment of attorney's fees.

(11) The prothonotary shall serve notice of this order on counsel of record by regular mail or personal service.

## APPENDIX TO CUSTODY ORDER

Certain rules of conduct generally applicable in custody matters are set forth below and are binding on all parties. The breach of any rule may subject the breaching party to contempt of court proceedings or form a basis to modify the custody order. If these general rules conflict with any specific provision of the custody order, the order shall prevail.

RULE 1. The custody or visitation provisions of the foregoing custody order are to be considered as the minimum requirements. However, the parties are free to expand the provisions by mutual agreement. No party can unilaterally, *i.e.*, as he or she pleases, increase or decrease periods of custody or visitation.

RULE 2. The parties shall not undertake or permit the influencing of the mind of the child(ren) against any party. Any communication or statement which is in any manner derogatory to the other party, obscene, or profane shall not be made to or in the presence of the child(ren).

RULE 3. The parties shall not argue or engage in heated discussion in the presence of the child(ren) or when the parties are exercising their communication rights with the child(ren).

RULE 4. The parties shall not question the child(ren) as to the personal behavior of the other party, except as necessary to insure the personal safety and welfare of the child(ren). No child shall be used as an informant or carrier of tales by either party.

RULE 5. The parties may not make extravagant promises to the child(ren) for the purpose of influencing the child(ren)'s loyalty at the expense of the other party. Any promise made to the child(ren) by either party

should be made only with the full intention and expectation of fulfilling the promise.

RULE 6. The parties should always consider the child(ren)'s best interest and should act accordingly. A child involved in a custody dispute needs positive assurance from his or her parents that he or she is loved and that it is not his or her fault that any differences exist between the parents.

RULE 7. The parties are reminded that children learn from what they see or experience at the hands of their parents or other relatives. If children are to be taught proper moral, spiritual and ethical conduct, it cannot be effectively accomplished if the parties themselves indulge in questionable conduct.

RULE 8. When exercising custody or visitation rights with the child(ren), the parties must assure that the child(ren) continues to attend school, church and other activities considered beneficial to the child(ren)'s overall growth and development.

RULE 9. Custody or visitation rights should be exercised on a regular, reasonable and acceptable basis. If it is impossible to exercise a period of custody or visitation, the other party should be immediately notified so that the disappointment or anxiety to the child(ren) that would result from a failed visit is reduced.

RULE 10. The party who has physical custody of the child(ren) should encourage, prepare and have the child(ren) available at the designated times and places so that visitations occur smoothly. Likewise, the party exercising partial custody or visitation rights should encourage, prepare. and return the child(ren) promptly at the designated times and places.

RULE 11. If occasions arise with either party which cause conflicts with the custody or visitation schedule,

the parties should be flexible and agree upon make-up time.

RULE 12. A party or the person responsible for transporting the child(ren) from and to the custodial residence must refrain from the use of alcohol and possess a valid driver's license with current operating privileges. Any party or designee who arrives to pick up the child(ren) and has used alcohol excessively, is intoxicated or does not possess a valid driver's license automatically forfeits that custody or visitation period. Any party or designee who returns the child(ren) and has been drinking alcoholic beverages excessively, is intoxicated or does not possess a valid driver's license automatically forfeits the next scheduled custody or visitation period. Chronic violations of this rule may result in a suspension of custody or visitation.

RULE 13. Each party must notify the other party if an emergency or illness requiring a physician's attention should occur to the child(ren) while in their physical custody.

RULE 14. Each party should encourage telephone and other communication between the child(ren) and the other party. Telephone calls should occur at reasonable intervals and reasonable hours, such as between 5:30 p.m. and 8:30 p.m., except for emergencies.

RULE 15. The party who has physical custody of the child(ren) must exercise the daily parental responsibilities. However, unless otherwise ordered, both parents should consult with one another on major decisions affecting the child(ren) such as education, religious training and medical treatment.

RULE 16. Each party must notify the other party of any change in their residence or phone number within 72 hours after any such change.