J-A25005-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| J.V., FATHER, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| J.V., MOTHER, | : | |
| | : | |
| Appellant | : | No. 165 EDA 2015 |

Appeal from the Order entered December 9, 2014,
Court of Common Pleas, Delaware County,
Civil Division at No. 6996-11

BEFORE:  PANELLA, DONOHUE and MUNDY, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED OCTOBER 20, 2015**

In this custody action, J.V. ("Mother") appeals from the order of court awarding J.V. ("Father") sole legal custody and primary physical custody of their four-year-old child ("Child").  Following our careful review, we affirm.

Mother and Father were married in May 2009.  Child was born in late 2010.  In September 2011, Mother discovered multiple indications that Father was involved in sexual relationships with other men.[1]  She took Child and fled to her parents' home in New Jersey.  Father filed a custody action in October of the same year.  Following a custody conference, a temporary

---

[1] After viewing father's credit card statements, Mother discovered charges from hotels and various homoerotic and pornographic websites.  Mother then installed spyware on the computer and unearthed digital evidence of Father's activities.  Based on what she observed on the computer, Mother feared that Father had a sexual interest in young boys. She turned the computer over to the Delaware County District Attorney, but the District Attorney did not file any charges against Father.

custody agreement was reached, wherein Mother was given sole legal and primary physical custody of Child and Father was given supervised visitation one afternoon each weekend. Father was also further required to submit to a psycho-sexual evaluation, and the parties agreed that the matter would be revisited following this evaluation. From this point until the final custody hearing nearly three years later in September 2014, the parties filed numerous emergency petitions and petitions for special relief in which the alleged that the other party was interfering with his or her custodial periods. During the pendency of this action, Father's custodial rights changed multiple times, increasing to shared physical and legal custody and, for a time, reverting back to supervised visitation.

Also of relevance to this appeal, during the pendency of this action, Mother sought, on multiple occasions, authorizations from Father for the release of information from various websites and social media sites that Father visited, as well as email communications from his America On Line ("AOL") account. As part of the custody action, the parties underwent psychological evaluations by Gerald Cooke, Ph.D. In addition to the psycho-sexual evaluation mentioned above, which was performed by a Dr. Kevin McDermott, Father was also ordered to undergo an evaluation by an expert in risk assessment and mental health.

At the conclusion of all proceedings, the trial court awarded Father sole legal and primary physical custody of Child, based in large part on its

conclusions that Mother perpetually interferes with Father's rights and access to Child; that Mother has not evidenced an ability to set aside her anger at Father for the sake of the best interests of Child; and that Father has demonstrated the ability to put Child's best interest first despite his acrimonious relationship with Mother.[2]

This timely appeal follows. Mother raises five issues for our review, which we have reordered for purposes of our discussion:

1. Did the trial court err or abuse its discretion by not allowing Mother to obtain emails from AOL sent by Father from September 1, 2011 to the present, which evidence, if presented to the [trial] [c]ourt, would have supported a finding and Mother's belief, that Father exhibited deviant behavior which behavior is not in the best interests of the Child?

2. Did the trial court err or abuse its discretion by relying on the conclusions of Gerald Cooke and Kevin McDermott in concluding that Father's deviant behavior did not pose a risk to the Child when Dr. Cooke and Dr. McDermott had not reviewed the electronic emails which were only obtained from AOL after their reports were issued?

3. Did the trial court err or abuse its discretion in relying on the conclusions of Margaret Pruett-Saratan MA in concluding that Fathers' deviant behavior posed a very low risk of danger to the Child where Ms. Pruett-Saratan was not an expert in the area of psycho-sexual evaluation?

---

[2] We are paraphrasing the three overarching themes of the trial court's findings. As it was required to, when making its decision, the trial court addressed the factors enumerated in 23 Pa.C.S.A. § 5328(a). **See** Trial Court Opinion, 12/9/14, at 15-27.

4. Did the trial court err or abuse its discretion in awarding Father primary physical custody in light of the factors set forth in 23 Pa.C.S.A. § 5328(a), especially in light of the recommendation of the custody evaluator, Dr. Gerald Cooke, who recommended equally shared custody?

5. Did the trial court err or abuse its discretion by awarding sole legal custody to Father?

Mother's Brief at 10-11.

We begin with Mother's challenge to the trial court's denial of Mother's request for access to certain email communications. Mother initially sought, and was granted, an order requiring Father to sign authorizations that would require AOL to provide her with emails and other information regarding Father's activity through his AOL account from August 2010 through September 1, 2011. Mother now argues that the trial court abused its discretion when it denied her subsequent request for authorizations so that she could obtain emails from September 2, 2011 to the date of her motion. Mother's Brief at 43.

Mother did not include this issue in her Pa.R.A.P. 1925(b) statement of matters complained of on appeal.[3] It is well established that an issue is

---

[3] In her Rule 1925(b) statement, Mother alleges that the trial court erred in not finding Father in contempt for failure to "cooperate with court orders regarding the discovery of information related to his electronic and internet usage[,]" and that it erred for not permitting her to issue subpoenas to AOL "regarding Fathers' deletion of information[.]" Concise Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 1/8/15, ¶ ¶ 17, 20.

waived for purposes of appeal if the appellant does not include it in his or her Pa.R.A.P. 1925(b) statement. **Yates v. Yates**, 963 A.2d 535, 542 (Pa. Super. 2008) ("As this argument was not raised in Father's Rule 1925(b) statement, it is waived."); Pa.R.A.P. 1925(b)(4)(vii).

Next, we turn to Mother's claim that the trial court erred in relying on the conclusions of the expert witnesses Dr. Cooke and Dr. McDermott because their opinions were formulated without reviewing the content of emails from Father's AOL account. Mother's Brief at 46. Mother failed to include this issue in her Pa.R.A.P. 1925(b) statement of matters complained of on appeal, as well. Accordingly, it, too, is waived. **Yates**, 963 A.2d at 542; Pa.R.A.P. 1925(b)(4)(vii).

In her third issue, Mother argues that the trial court erred in relying on the conclusions of Margaret Pruett-Saratan in rendering its decision. Mother's Brief at 49. The precise nature of Mother's argument is not clear. Mother seems to argue that because Ms. Pruett-Saratan is not an expert in psycho-sexual evaluations and did not administer such an evaluation to Father, she was not qualified to offer an opinion as to whether Father poses a risk to child. **Id.** at 49-50 (citing case law for the proposition that permitting expert opinion testimony from an unqualified expert is an abuse of discretion). However, Ms. Pruett-Saratan was not appointed to perform a

---

Although these issues also involve discovery matters, they are wholly distinct from the issue Mother presents on appeal.

psycho-sexual evaluation of Father. The trial court ordered her to perform a psychological evaluation, and it accepted her as an expert in risk assessment and mental health, not as a psycho-sexual expert. Trial Court Order, 5/6/15, at 1; N.T., 5/15/15, at 28. To the extent that Mother argues that the trial court erred in accepting Ms. Pruett-Saratan's opinion regarding risk to Child because she did not perform a psycho-sexual evaluation of Father, we note that this issue was not included in Mother's Rule 1925(b) statement, and therefore has been waived. We further note, however, that in conducting her evaluation of Father and formulating her opinion that Father did not pose a risk to Child, Ms. Pruett-Saratan considered, among many other items, Dr. McDermott's psycho-sexual examination and report. N.T., 5/15/14, at 29, 35-37.[4]

Mother properly preserved her remaining claims, which challenge the trial court's awards of legal and physical custody, and so we will address the merits thereof, cognizant of our standard and scope of review:

> We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. *M.P. v. M.P.,* 54 A.3d 950, 953 (Pa. Super. 2012). Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. *Id.* We defer to the trial judge regarding credibility

---

[4] To the extent that Mother is arguing that the trial court erred in not appointing an expert to perform another psycho-sexual evaluation rather than Ms. Pruett-Saratan, we must find that issue waived because Mother did not include it in her Rule 1925(b) statement. *Yates*, 963 A.2d at 542; Pa.R.A.P. 1925(b)(4)(vii)

and the weight of the evidence. ***Id.*** The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. ***Id.*** We may reject the trial court's conclusions, but only if they involve an error of law or are unreasonable in light of its factual findings. ***Id. See also J.R.M. v. J.E.A.***, 33 A.3d 647 (Pa. Super. 2011); ***Hanson v. Hanson***, 878 A.2d 127, 129 (Pa. Super. 2005); ***Landis v. Landis***, 869 A.2d 1003, 1011 (Pa. Super. 2005).

***W.C.F. v. M.G.***, 115 A.3d 323, 326 (Pa. Super. 2015).

We begin with Mother's claim that the trial court erred in awarding Father primary physical custody. The Domestic Relations Code provides as follows:

> In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.

- 7 -

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

> (15) The mental and physical condition of a party or member of a party's household.
>
> (16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

As required, the trial court considered all of these factors and explained its findings as to each. **See** Trial Court Opinion, 12/9/14, at 15-27. Our exhaustive review of the record reveals that all of the trial court's findings are supported by evidence of record. Mother presently asks this Court to reject the trial court's findings (and credibility determinations upon which these findings are based) in favor of the findings that she proposes. **See** Mother's Brief at 52-66. We cannot do this. As set forth above, we must accept the findings of the trial court that are supported by the evidence and we must defer to the trial court's credibility determination. **W.C.F.**, 115 A.3d at 326. **See also M.J.M. v. M.L.G.**, 63 A.3d 331 (Pa. Super. 2013) (rejecting appellant's argument urging this Court to reconsider the trial court's findings with regard to the § 5328(a) factors).

Finally, Mother challenges the trial court's award of sole legal custody to Father. Legal custody, Mother recognizes, is defined as "[t]he right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions." 23 Pa.C.S.A. § 5322(a). When considering whether an award of shared legal custody is appropriate, a trial court must consider the following factors:

> (1) whether both parents are fit, capable of making reasonable child rearing decisions, and willing and able to provide love and care for their children; (2) whether both parents evidence a continuing desire for active involvement in the child's life; (3) whether the child recognizes both parents as a source of security and love; and (4) whether a minimal degree of cooperation between the parents is possible.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 22 (Pa. Super. 2010). Mother argues that "there is no question that the parties have satisfied the first three requirements[,]" and challenges the trial court's conclusion that the conflict between the parties precludes a finding that they could cooperate. Mother's Brief at 41. Mother emphasizes that "all that is required is a **minimal** degree of cooperation between the parties[,]" and contends that "[t]here is no basis in the record for a finding that even a **minimal** degree of cooperation between the parties in not possible." *Id.* (emphasis in the original).

Addressing this claim, the trial court set forth the four factors outlined above and then found as follows:

> The record in the present matter is replete with evidence showing that Mother was not able to isolate her personal conflicts with Father from her role as a parent to [Child]. For instance, as was addressed in this [c]ourt's Findings of Fact and Conclusions of Law, Mother's actions evidenced her inability to make rational decisions about the child's best interests as she was so focused on thwarting Father's contact with the child. Evidence of this includes Mother's interference with Father's supervised visitation through Media Counseling Services, Mother's altercation with the paternal

grandfather prior to Father's custodial time on Father's Day 2013, Mother's contact with the U.S. Department of State in an effort to interfere with Father's ability to hire an au pair, Mother's engaging a private investigator to observe Father's custodial time on Christmas Eve 2013, and the incidents surrounding Mother's step-father's funeral.

Furthermore, this [c]ourt heard ample testimony to believe that Mother is so committed in her belief that Father is a pedophile and so angry with Father for his lack of candor before marriage about his sexuality that she is unable to make rational decisions with Father regarding [Child's] welfare. Mother subjected Father to three years' worth of investigation into his personal affairs including turning his personal computer over to the Delaware County District Attorney's Office for investigation, obtaining Father's personal AOL account mails, insisting that Father attend multiple sessions with various evaluators, and subjecting Father to testifying in detail regarding intimate details of his sexuality. It is clear from this testimony that Mother is so committed to her belief that Father is a pedophile so distracted by her pain in finding out that her husband is homosexual that she cannot facilitate a decision-making relationship with Father that is beneficial to [Child]. This anger and inability has not subsided throughout the long life of this custody litigation.

The [c]ourt, in its order, cited many more instances that show Mother's inability to isolate her personal conflicts with Father from her role as a parent and put [Child's] best interests at the forefront of her life. Mother has made disparaging remarks about Father in front of [Child] and she has forced the parties to obtain a new doctor for [Child] after making outbursts at the doctor's office. Most importantly, it is clear that Mother interprets the entire controversy in her life as victimizing her as opposed to how it affects [Child]. Mother even stated at one point in the litigation that she is "the victim

- 11 -

> here." Throughout the years of litigation, Mother almost exclusively referred to [Child] as "the child" rather than by name[,] evidencing her belief that she is the focus of the litigation while the welfare of [Child] is merely a collateral issue. Based on this evidence it is clear that Mother was not able to isolate her conflict with [F]ather from her duty as a parent and cooperate with Father to make decisions that are in the best interest of [Child]. As such, this [c]ourt's decision was reasonable and not an abuse of discretion.

Trial Court Opinion, 5/14/15, at 4-6.

We have thoroughly reviewed the voluminous record in this case and conclude that it supports the trial court's findings; accordingly, we cannot find that the trial court erred. Mother asks us to view her actions "against the back drop of her belief at the time of the hearings that Father's behavior … could pose a danger to the parties' very young child." Mother's Brief at 42. This argument, again, asks us to alter a credibility determination made by the trial court, which we cannot do. **W.C.F.**, 115 A.3d at 326. It is not for this Court to recast the light in which Mother acted or opine as to her motivations. The actions identified by the trial court are borne out by the record, and it was for the trial court to reject as incredible Mother's claims that all such actions were taken only in an effort to protect Child. We cannot disturb the trial court's ruling.

Mother also argues that it was error for the trial court to award Father sole legal custody because he did not seek sole legal custody and because the court-appointed custody evaluator, Dr. Cooke, recommended joint legal

custody. Mother's Brief at 42. We disagree. In child custody matters, "the paramount concern of the trial court is the best interest of the child." *R.L.P. v. R.F.M.*, 110 A.3d 201, 208 (Pa. Super. 2015) (quoting *S.M. v. J.M.*, 811 A.2d 621, 623 (Pa. Super. 2002)); *see also Warren v. Rickabaugh*, 600 A.2d 218, 220 (Pa. Super. 1991) ("In custody disputes the controlling question and paramount concern of the court is the best interests of the child; all other considerations are deemed subordinate to the child's physical, intellectual, moral, and spiritual well-being.") As such, the trial court was not limited to any particular forms of legal or physical custody (whether they were requested by the parties or not), and it was not bound to accept the recommendation of an expert witness. *Cf. R.L.P.*, 110 A.3d at 208 ("[T]he parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.").

In concluding, we note that here, as in all child custody cases, the trial court's final determination was driven in large part by its perceptions of the parties and their actions. These are the credibility determinations that this Court is without authority to disturb so long as they are supported by evidence of record. However, we further note that this custody determination, like all custody determinations, is always modifiable. *G.B. v.*

***M.M.B.***, 670 A.2d 714, 716 n.2 (Pa. Super. 1996) (en banc) ("All custody orders are subject to modification upon a showing that a change in current custody arrangements would be in the child's best interest."). As such, with the passage of time and harmonious cooperation within the context of the current custody arrangement, Mother can ask the trial court to revisit its determination and consider whether other custodial arrangements would be in Child's best interest.[5]

Order affirmed.

Panella, J. and Mundy, J. concur in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2015

---

[5] Father's application for relief, filed August 11, 2015, is denied.