459 A.2d 403

**In re Mary Lou LONG.**

**Appeal of Orie and Georgia LONG, Parents.**

Superior Court of Pennsylvania.

Argued Jan. 12, 1983.

Filed April 15, 1983.

48

Joseph M. James, Pittsburgh, for appellants.

Helen Margaret Tremont, Pittsburgh, for appellee.

Before POPOVICH, MONTGOMERY and VAN der VOORT, JJ.

PER CURIAM:

Orie N. Long, Sr. and his wife, Georgia Long, natural parents of Mary Lou Long (birthday June 21, 1973) appeal from the order of Judge Tamilia granting custody of the child to Mr. and Mrs. Leonard Zankel[1] and denying appellants' visitation.

The child and two sisters were adjudicated dependents in August 1978 in Crawford County; in the present proceedings a stipulation of dependency was entered on the record.[2]

On January 7, 1981, the case was ordered continued to February 4, 1981 with the child "to remain in the custody of the Paternal Uncle and Aunt, Mr. and Mrs. Zankel." Similar deferments were made from February 4, 1981 to April 1,

---

1. Mrs. Zankel is appellant-father's sister.

2. The status of the two sisters is not before this court.

1981; then to May 13, 1981; and to June 4, 1981. Provision was made for visitation by the parents on Tuesdays and Thursdays. Finally, on September 11, 1981, the present order was entered ordering that the child "remain in the custody of the Paternal Uncle and Aunt and visitations to be denied with natural parents."

Appellants' Brief refers to four "Questions Involved." In essence, the contentions of error are two-fold:

1. That the lower court refused to hear testimony from a business associate, and a niece of the husband-appellant, tending to show that the appellants (separated in January, 1981) had since reconciled and had established a reasonably stable family relationship; and

2. That the lower court terminated visitation rights ex parte without prior notice to appellants, on the basis of a letter from a case worker and a telephone conversation with another case worker.[3]

In the early stages of this litigation, up to about June, 1981, all parties seemed to be going along with an arrangement under which the Zankels would have custody of the child, with visitation privileges to the natural parents. Initially, visitation occurred on Saturdays and Sundays but was changed on June 4, 1981, with some complaints by the parents, to Tuesdays and Thursdays to suit the desires of the foster parents.

On June 29, 1981, Kimberly Beavers, Child Development Specialist at the South Hills (Pittsburgh) Child Guidance Center wrote Judge Tamilia stating that the child's visits to her parents' home indicated regression on her part "as she appears to be having difficulty with what she experiences when visiting her parents; that her regression is interfering with the course of her psychotherapy." She recommended that visits between Mary Lou and her parents be further limited or restricted altogether. On or about June 25, 1981, a Mr. Giesey, a caseworker, contacted Judge Tamilia for

3. Due to our resolution of these claims we find it unnecessary to discuss the substantive merits of the custody award.

permission to discontinue the visits; such was granted, apparently without formal order, pending the hearing scheduled for September 11, 1981.

At the hearing on September 11, 1981, the natural parents did not appear, although they were represented by counsel.[4] Giesey's oral statement of developments since the last hearing was incorporated into the record without objection and Mrs. Zankel testified that the child's visits to her parents made her fearful that her parents would take her away from her brothers and sisters (who were also staying with the Zankel's) and that the child was "a happier and freer child in July and August", when the visits had ceased. The child also indicated in response to the court's inquiry that she wanted to stay with her aunt, and did not want to visit with her Mother. At that point the court entered the "final order" that the child remain in the custody of the Zankels and that visitation be denied to the natural parents.

 It is the policy of this Commonwealth to preserve the family unit wherever and to whatever extent possible, even though a child has been adjudicated a dependent; she may be removed from her parents' custody only upon a showing of clear necessity. *In Re Donna W.*, 284 Pa.Superior Ct. 338, 343, 425 A.2d 1132, 1134, (1981); *In the Interest of Pernishek*, 268 Pa.Superior Ct. 447, 457, 408 A.2d 872, 877 (1979). If a determination has been made that the child is to be taken from the custody of her parents, custody should be awarded according to the "best interests" of the child, *In Re Donna W.*, supra.

 Even after the child has been given into the custody of others, the natural parents, except in fairly extreme circumstances, should be awarded visitation rights; such "must be carefully guarded": *Palmer v. Tokarek*, 279 Pa.Superior Ct. 458, 475, 421 A.2d 289 (1980). "Visitation ... has been limited or denied only where a parent has been shown to suffer from severe mental or moral deficiencies

4. The court was advised that the husband was out looking for work.

that constituted a grave threat to the child! *Scarlett v. Scarlett,* 257 Pa.Super. 468, 472, 390 A.2d 1331, 1333 (1978)." *Hoffer v. Hoffer,* 301 Pa.Superior Ct. 289, 447 A.2d 972 (1982). Further, the record which is claimed to support an order of this character must be reasonably complete, and the hearing judge must by his opinion give us the benefit of a thorough analysis of that record. *In Re Desiree B.,* 304 Pa.Superior Ct. 461, 450 A.2d 1003 (1982); *Commonwealth ex rel. Newcomer v. King,* 301 Pa.Superior Ct. 239, 447 A.2d 630 (1982).

Judge Tamilia's opinion reviews the somewhat lengthy history of this litigation; points out that the natural parents have in the past had difficult relations with each other, which difficulties resulted in emotional problems with the children, especially the youngest, Mary Lou; and concludes that the great weight of the evidence—caseworkers, the paternal aunt Mrs. Zankel, and Mary Lou—establishes that the visits of Mary Lou to her parents are detrimental to her emotional rehabilitation.

■ However, at this time, we find it unnecessary to review the merits of the substantive issues of this case as we find that the natural parents were improperly denied their right to put on the record the testimony of the niece, Sandra Dougherty and the father's business associate, James Moran. Both were offered to prove that the relations between the natural parents inter sese had improved substantially. Judge Tamilia refused to receive the testimony on the apparent grounds (1) that the witnesses were obviously not in a position to know what was the conduct of the parents when alone and/or with their children, and (2) that the testimony had little, if any relevancy on the primary question of what was in the best interest of the child.

The Juvenile Act, 42 Pa.C.S.A. § 6338(a) states that: "A party is entitled to the opportunity to introduce evidence and otherwise be heard in his own behalf and to cross-exam-

ine witnesses." The natural parents were obviously parties to this present procedure. The hearing court had the responsibility to receive evidence from all interested parties, as well as from objective, disinterested witnesses. *In Re Donna W.,* supra; *In Interest of Black,* 273 Pa.Superior Ct. 536, 417 A.2d 1178 (1980); *In Interest of Pernishek,* supra; and *Interest of Clouse,* 244 Pa.Superior Ct. 396, 368 A.2d 780 (1976). The court should have allowed the testimony of the proffered disinterested witnesses who, observed the interaction of parents and child.

■■■ Similarly, we find that the opinion and recommendations of Kimberly Beavers, child counselor, contained in her letter of June 29, 1981 to Judge Tamilia should not have been utilized by the Hearing Judge as a partial basis of his order. Ms. Beavers was not called as a witness. A party or litigant has a right to an in court presentation of evidence, such is essential to due process. Such report or letter cannot be received into evidence over objection in a custody matter unless its author is sworn, examined and subjected to cross examination. *Palmer v. Tokarek,* 279 Pa.Superior Ct. 458, 421 A.2d 289 (1980).

We therefore are obligated to set aside the order of September 11, 1981, and to allow appellants to present the excluded testimony relevant to the issues of custody of the child and visitation rights of the natural parents. In addition to considering the evidence already in the record, the lower court shall afford the parties the opportunity to present additional evidence. Proceedings on remand should take place with "utmost dispatch." *In the Interest of La Rue,* 244 Pa.Superior Ct. 218, 235, 366 A.2d 1271, 1280 (1976). Any party aggrieved by the trial court's decision may perfect an appeal with this court. We do not retain jurisdiction.

Order vacated and case remanded for proceedings not inconsistent with this opinion.