602 A.2d 1382

**In re DONNA H., a Minor.**

**Appeal of DONNA H., the Above Named Minor.**

Superior Court of Pennsylvania.

Argued Nov. 19, 1991.

Decided Feb. 5, 1992.

206

Georgene Siroky, Pittsburgh, for appellant.

Frank B. McWilson, West Mifflin, for parents of Donna H., participating parties.

Laura J. Whiteman, Pittsburgh, for Children and Youth Services, participating party.

Before BECK, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

This is an appeal by appellant, Donna H., a minor, from the trial court's February 8, 1991 Order placing Donna H. in the continued custody of her parents. Children and Youth Services (CYS), appellee, joins in the brief of appellant.

Donna was born May 1, 1988 and was adjudicated dependent in December, 1988, as a result of injuries suffered when her mother, appellee, Marjorie H., who was intoxicated, struck the grandmother of Donna, who was holding her at the time. The court placed Donna in the custody of the Edgars, who were neighbors and friends of Donna's family. After Marjorie was released from jail, she completed a four-week detoxification program at St. Francis Hospital. On June 7, 1989, at a regular dispositional review hearing, the court received evidence Marjorie's detoxification program was to extend five or six weeks after the hearing. The court decided a three-month review would be appropriate, and continued the placement of Donna with the Edgars, who by this time were a CYS foster home. Another periodic review on September 6, 1989 resulted in an Order that Donna remain with the Edgars while CYS pursued a plan to return Donna to her mother in three to four months, with the ultimate goal of reunification. At this hearing a CYS caseworker testified there had been several domestic quarrels in the home, some alcohol related, but since early July the family seemed to progress and stabilize. A review hearing on December 6, 1989 disclosed Marjorie had continued her drug and alcohol therapy and there had been no reported domestic incidents since July, 1989. CYS recommended the immediate return of Donna to Marjorie's custody. Even though Donna had spent twelve of the nineteen months of her life with the Edgars, the court ordered Donna returned to her mother's custody, with visitation by the Edgars allowed on a diminishing basis. Approximately

two months later, on February 8, 1990, a shelter hearing was held in the interest of Donna H. and the new CYS caseworker informed the court that on February 6, 1990, upon request, police officers responded to a reported domestic dispute at the home of Marjorie, Donna and Anthony C., Marjorie's boyfriend. One officer found Anthony C. passed out on the stairway, and he arrested him for public drunkenness. The officer stated in his report he found Marjorie in the apartment very intoxicated and noted Donna needed her diaper changed and was drinking from a bottle containing very sour milk. After Marjorie was arrested, the court once again removed Donna from her home and placed her in the custody of CYS, who again placed Donna with the Edgars. On August 10, 1990, the court reviewed Donna's placement and decided to return the child to her mother because of the steady progress she and her boyfriend had made in dealing with alcoholism and domestic problems. The next review was scheduled for February 8, 1991. On January 29, 1991, police stopped Marjorie for driving erratically and under the influence of alcohol. Donna was sitting unrestrained in the backseat of the car at the time. Marjorie admitted to the officers she had been drinking and had taken Donna to a bar to search for her boyfriend. At the review hearing, Marjorie testified that Donna's awakened state at the late hour of almost 2:00 a.m. was usual for the child since her father worked such late hours. Following the testimony of a CYS caseworker, the court questioned Marjorie and her friend, but did not allow either counsel for the child or CYS the opportunity to cross-examine either witness. The court then permitted Marjorie's attorney to re-call the CYS caseworker to discuss Donna's general care apart from the incident. The court did not permit counsel for the child to introduce any testimony or call any witnesses or even state a position for the record on behalf of the child. The court indicated its belief the occurrence was an isolated one and, therefore, ordered that Donna remain in the custody of her mother. On May 10, 1991, the court held a periodic review and found Marjorie had no relapses and was providing proper care for Donna.

Counsel for Donna H. and CYS argue the court, during the February 8, 1991 hearing, did not provide them with the opportunity to present any evidence beyond the court's own inquiry which interrupted the presentation of their case. They argue the January, 1991, incident established Donna was again at risk of serious harm due to her mother's inability to control her drinking and, therefore, Donna's best interests require removal to foster care until her parents successfully complete proper rehabilitation.

Marjorie responds the issue is now moot because she is currently providing proper care for Donna in her house. She also argues the trial court properly weighed current facts and Marjorie's parenting ability against her past behavior.

■ Our standard of review and greatest concern with child custody determinations of the trial court is to determine the best interest of the child. In *Belan v. Belan,* 399 Pa.Super. 458, 582 A.2d 684 (1990), this Court stated:

In reviewing a custody order, we are not bound by findings of fact made by the trial court which are unsupported in the record, nor are we bound by the trial court's inferences drawn from the facts. However, on issues of credibility and weight of the evidence, we defer to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. Only where we find that the custody order is "manifestly unreasonable as shown by the evidence of record ..." will an appellate court interfere with the trial court's determination. Therefore, unless the trial court's ruling represents a gross abuse of discretion, we will not interfere with its order awarding custody.

*Id.,* 399 Pa.Superior Ct. at 462, 582 A.2d at 686–687, quoting *Mumma v. Mumma,* 380 Pa.Super. 18, 21, 550 A.2d 1341, 1343 (1988) (citations omitted).

In *In the Interest of Clouse,* 244 Pa.Super. 396, 368 A.2d 780 (1976), this Court explained the proper method the trial

court should adhere to in conducting a child custody case and the consequences if it is not followed.

In a child custody case, the hearing judge should receive evidence from all interested parties, and the child should be represented by counsel, for the child's interest may be distinct from any other party's. The judge should also receive evidence from objective, disinterested witnesses. His inquiry should be comprehensive and searching, and his decision supported by a full discussion of the evidence. If the hearing judge does not comply with these requirements, on appeal the case will be remanded for further proceedings. This is so because "in child custody cases [the scope of our review] is quite broad and, while we cannot nullify the fact-finding function of the hearing judge, we are not bound by a finding which has no competent evidence to support it."

*Id.*, 244 Pa.Superior Ct. at 399–400, 368 A.2d at 781–782 (citations omitted), quoting *Commonwealth ex rel. Morales v. Morales*, 222 Pa.Super. 373, 376, 294 A.2d 782, 783 (1972); *In Re Barclay*, 321 Pa.Super. 417, 468 A.2d 778 (1983); *In the Interest of Theresa E.*, 287 Pa.Super. 162, 429 A.2d 1150 (1981); *see also In the Interest of Jones*, 286 Pa.Super. 574, 429 A.2d 671 (1981) ("We agree that the utmost concern is for the children's welfare [and therefore] nothing short of the 'comprehensive and searching inquiry into the facts' mandated by decisions of this court will be acceptable.") *Id.*, 286 Pa.Superior Ct. at 584, 429 A.2d at 676 (citations omitted).

■ After a careful review of the record, we find the trial court, during the February 8, 1991 hearing, did not give counsel for Donna and CYS an opportunity to present their case and evidence and did not perform a "comprehensive and searching inquiry" in determining Donna H.'s best interests. In view of Marjorie's past behavior, even an "isolated incident" could not be ignored and, therefore, a full hearing is required to determine whether the court should remove the child or consider further remedial programming for her parents. While we are cognizant of the necessity not to substitute our judgment or discretion for

that of the trial judge, we fail to see the basis for the trial court's determination that the incident of January 29th could be distinguished from the previous conduct, when alcohol abuse by one or both adults appeared to be one of the contributory factors to earlier removals of the child.

In *In Re Swope*, 391 Pa.Super. 484, 571 A.2d 470 (1990), we stated the burden of proof in a dependency proceeding is upon the petitioner attempting to remove custody from the parent to show by clear and convincing evidence the juvenile is without proper parental care and such care is not immediately available. In the present case, appellee argues and the trial court found counsel for Donna H. did not meet this heavy burden of proof in light of the evidence presented at the hearing.

■ We must reiterate the trial court never gave counsel the opportunity to meet its burden of presenting "clear and convincing" evidence that would put to test Marjorie's ability to adequately provide future care for Donna. Further, the record claimed to support that the trial court's Order "must be reasonably complete and the hearing judge must by his opinion give us the benefit of a thorough analysis of the record." *In Re Long*, 313 Pa.Super. 47, 52, 459 A.2d 403, 405 (1983). Here, the trial judge analyzed the January 29, 1991 incident and the situation in the home since that time, but did not seem to take into account the past behavioral and domestic problems of the mother. The failure of the trial court to permit the establishment of a full and complete record concerning these past episodes and to relate them to the one at issue, denied him the opportunity to properly evaluate the case and prevents this Court from performing an appropriate appellate review.

In its Opinion, the trial court did discuss some other past episodes and relapses of the mother, but stated in all of these situations, removal of Donna was necessitated by the mother's physical unavailability and, therefore:

This Court believes that the situation presented at the hearing on February 8, 1991, is distinguishable for the Mother was physically available to provide care and thus

for the first time in the context of a request for removal arose the issue of whether this immediately available parental care would be proper care.

(Slip Op., Jaffe, J., 5/23/91, pp. 4–5.)

The court concluded "neither the Child Advocate nor the caseworker presented any evidence in regard to this essential inquiry." Slip Op. at 5. While this may be factually true, the record supports appellant's position they were denied an opportunity to do so and the fundamental requirements of due process required in a juvenile dependency proceeding were lacking because of the procedure adopted by the trial court. *See Clouse, supra.* The unavailability of the mother of which the trial court speaks of was a result of the mother's alcoholism and relationship with her boyfriend. The incident of January 29th involved the mother's intoxication and search for her boyfriend at 2:00 a.m. with Donna H. in the backseat. We fail to see how the mother's availability is the key to a proper decision in this case when the precipitating factors were and have been the same throughout. Thus we must remand the case to give counsel for Donna and CYS the opportunity to establish for the record the elements which they believe were properly supported by the evidence which would address the mother's ability to continue custody and care of Donna in the future.

██ Appellee argues the removal question is moot because no controversy exists. She asserts the May 10, 1991 dispositional review hearing shows she has been providing proper parental care since the February, 1991 Order and there have been no more incidents or complaints from May, 1991 until the present time. Appellee correctly implies the evidence of past episodes of alcoholism and domestic quarrels of the mother and her boyfriend *arguably* fail to show the mother cannot currently and in the future provide proper care for Donna. But we find this removal evidence is still very much a proper issue for consideration in determining the question of the mother's future ability to care for Donna. Therefore, counsel for Donna must be given

the opportunity to address this question at the rehearing and the issue is not moot.[1] In addition, because of the possibility or likelihood that a similar procedure will occur in the future in this or other cases, mootness will not be the basis for dismissing the action or affirming the trial judge. *Devlin v. Osser*, 434 Pa. 408, 254 A.2d 303 (1969).

We remand the case for a rehearing consistent with this Opinion.

Jurisdiction relinquished.

BECK, Judge, dissenting:

I dissent. I would affirm the trial court's February 8, 1991, order to leave the child in the custody of her mother. I believe that the trial court's ruling was amply supported by the evidence adduced at the February hearing. I consider the majority's conclusion that a remand is necessary to be wholly unwarranted, indeed pointless.[1]

I have carefully reviewed the record and find no support for the majority's conclusion that the trial court failed to provide counsel for the minor child and counsel for Children and Youth Services (CYS) the opportunity to develop a full record in the instant case. In fact, it is clear to me that at the February hearing the trial court fully and fairly determined that the petitioners had not met their burden in attempting to remove the child from the custody of her mother.

In the first place I note that appellant has failed to include in her brief a statement of questions involved. Pa.R.A.P. 2116 mandates the inclusion of such a statement and indicates that it is considered "in the highest degree mandatory". Ordinarily this court will not consider any

---

1. In light of our disposition of this case, we need not address appellant's argument the trial court erred in admitting the out-of-court letter of the therapist, which concerned the psychological impact of the foster parents' visits on the mother, without allowing appellant to cross-examine the declarant.

1. It is unclear to me what the remand is expected to accomplish in light of continued supervision by CYS after the February hearing and a later hearing by the court confirming that the family was doing well.

point which is not set forth in a statement of questions involved. In this case, the majority bases its reversal on an argument which not only is not set forth in the omitted Rule 2116 statement, but is also only vaguely alluded to in the body of appellant's brief. Indeed, these indirect allusions to the argument that a full hearing was not permitted in the argument portion of appellant's brief is the first time such an argument was made by any party.

For instance, in its statement of matters complained of on appeal filed with the trial court, counsel for the child only alleged that the trial court erred in failing to find that mother's ongoing alcoholism amounted to clear and convincing evidence of the necessity to remove Donna from her care, along with a claim that hearsay was improperly admitted. Nowhere did appellant allege, however, prior to filing its brief with this court, that the trial court prevented counsel from presenting Donna's case, interrupted counsel, or failed to provide counsel with an opportunity for cross-examination. Other than objecting to the admission of alleged hearsay, appellant gave no indication at the time of the hearing that it was dissatisfied with the manner in which the hearing was conducted. The record simply does not support appellant's vague claim that the opportunity for a full hearing was somehow impeded by the trial court.

Nothing which occurred at the February hearing substantiates the belated argument, which the majority accepts and upon which it bases its remand decision, that counsel was afforded no opportunity to present its case. There is not the slightest indication that counsel for Donna or for CYS had any evidence or argument to offer which the trial court was unwilling to hear. Even now, counsel does not suggest what evidence, if any, it was prevented from presenting to the trial judge.

Moreover, it is my view that whatever error may have occurred at the February hearing has been rendered moot by the findings and conclusions occasioned by a later hearing on May 10, 1991. At the May 10, 1991, hearing CYS testified that the mother continued to make progress in her

therapy. In addition, the CYS worker testified several unannounced home visits revealed that the family was doing "very well."

Appellant's true challenge in the case is not a failure to award appellant a full hearing but is a challenge to the trial judge's interpretation of the significance of the January 29th episode. On January 29 the mother who had been drinking was driving her car. The child was in the back seat and was not buckled into a harness. The trial judge weighed this isolated episode against the steady progress mother had made towards rehabilitating herself, the salutary goal of family reunification and the cessation of the constant shift of custodians for Donna. Apparently, appellants conclude that the trial judge did not give appropriate weight to the relapse even in light of the significant progress mother had made and the fact that, otherwise, Donna was well cared for. In my view, the argument that the judge did not assign the incident determinative weight is not a proper basis upon which to premise reversal. This is particularly so in light of the trial court's intimate and thorough familiarity with the case. The trial judge has overseen this dependency proceeding for almost two years.

A review of the February hearing which is the subject of this appeal reveals sufficient testimony to support the court's determination not to remove Donna from her mother's custody. Background of the case reveals that Donna was first adjudicated delinquent in December, 1988, when she was only about seven months old and was placed in the foster care of neighbors and close family friends, the Edgars. Henceforth commenced a series of frequent, closely monitored reviews and hearings, all of which occurred before the same trial judge. In general, the parties, particularly mother and child, have been represented by the same counsel throughout.

Reviews were held before the trial court on: February 24, 1989; June 7, 1989; September 6, 1989. Finally, on December 6, 1989, after being satisfied that mother had made both substantial efforts and progress in conquering her alcohol

abuse problem and had demonstrated her ability to care for her child, the trial judge returned Donna to her mother's custody. The court also ordered that the foster family be permitted regular visits. At the December 6, 1989, hearing the trial court found that the progress mother had made was "as good a report as [he] had gotten for reunification".

Oversight continued, however, and in February, 1990, Donna was again removed from the mother's care and replaced with the foster family. This occurred as a result of a domestic dispute at mother's home which was precipitated by alcohol abuse. Another review took place on May 9, 1990, which indicated that mother was participating in an alcohol rehabilitation program, receiving counseling and attending regular AA meetings. Further review was scheduled for August 10, 1990.

On August 10, 1990, the trial court once again returned Donna to her mother's custody. The trial court found that mother had steadily progressed "in dealing with her alcoholism, parenting skills, and personal and domestic problems". Mother's therapist reported that she was doing well, there was no evidence of a relapse into former problems and as a result CYS recommended that Donna be returned to her mother. The Edgars were permitted continued access to Donna and a review was scheduled for February 8, 1991.

At the February hearing it came to the court's attention, through the testimony of the CYS caseworker, that on January 29, 1991, mother had been stopped for drunk driving and that Donna was with her in the car, unrestrained by a carseat. The CYS caseworker indicated that, aside from this incident, the gravity of which no one diminished, mother was "doing well ... attending therapy and .... [that] Donna is doing well with her mother".

In fact, the caseworker reiterated later in the hearing that "[t]here has never been a concern about how [the child] has been cared for." The seriousness of this episode prompted extensive questioning of the mother by the trial judge regarding the circumstances which led up to this dangerous breach of parental responsibility. Apparently,

the mother's sincerity and credibility convinced the trial court "that she has learned a lesson from this serious, but isolated, failure on her part and that it will not be repeated." Therefore, the trial court continued Donna's custody with her mother.

Between August 10, 1990, when the trial court returned Donna to her mother's custody for the second time, and February 8, 1991, the record reveals consistent headway on mother's part towards conquering her alcohol problems. It is clear from the record that the trial court took very seriously the lapse in judgment and responsibility which was represented by the January 29th incident. It is without any foundation, in my view, to conclude as the majority did that the trial court "did not seem to take into account the past behavioral and domestic problems of the mother." The trial court was exceedingly aware of and sensitive to mother's past problems and had in fact removed the child from her custody twice before. However, on February 8, the evidence overwhelmingly substantiated the trial judge's conclusion that mother's significant overall progress and ability to provide proper parental care outweighed the isolated incident relied upon by CYS to recommend removal.

The majority seems to think that the trial judge lacked sufficient information to make a decision at the February hearing. Even counsel for Donna concedes in its brief to this court that it would have been absurd to demand or expect that CYS or Donna's counsel be required to recount the history of the case to the trial judge who had presided over this proceeding from the start. Appellants presumed, rightly, that the judge knew the case extremely well, having conducted periodic hearings every three months for two years. The nature of the "full and complete record" which the majority now remands to establish is unclear. In my view, despite its protestations, the majority is doing precisely what this court must not do in reviewing custody decisions such as this one, and that is, substituting its judgment for that of the trial court which has conscientiously and painstakingly followed the case from its inception. I be-

218

lieve that the trial court, with its unique opportunity to see and hear the witnesses and place the case in proper context, is in a far better position than is this court to appreciate and decide the best interests of Donna and the ability of her mother to properly care for her. I would affirm the trial court's considered order.