**Watters v. Watters**

16

C.P. of Lawrence County, no. 10242 of 1999, C.A.

*Norman A. Levine,* for plantiff.
*Gabriel P. Cilli,* for defendant.

MOTTO, *J.,* November 22, 1999—This case is before the court for disposition following the completion of custody hearings. This custody dispute relates to the

two children born to the marriage of the parties, Brittany Joan Watters, born July 9, 1986, and Donald R. Watters III, born March 6, 1989. Although both children are the subject of these proceedings, the principal issue presented in the case is whether primary physical custody of Donald R. Watters III, should be transferred from the plaintiff, Connie L. Watters, to the defendant, Donald R. Watters Jr., which would thereby bring about a separation of the siblings, as Mother has heretofore had primary physical custody of both children.

The parties are husband and wife, having been married on March 30, 1985. The children who are the subjects of these proceedings were born to the marriage of the parties. Neither party has any other children and the marriage was a first marriage for both parties.

Father is approximately 45 years of age and in good health. Mother is approximately 41 years of age and in general good health, except that she has suffered from understandable stress relating to the breakup of the marriage between the parties, as a result of which she utilizes medication to help her sleep and address nervousness and mild depression.

The parties are not divorced but are undergoing divorce litigation.

During the marriage, up until Father left the marital bedroom and took up residence in the basement of the marital home in February of 1999, the parties cooperated with each other in parenting the children. Father was the primary breadwinner for the family, working five days a week, daylight hours, in the business of selling and installing cemetery memorials, a family-owned business. Mother did not work outside of the home after the birth of Brittany and was the primary caretaker for the

children. The parties lived together in an attractive home and provided a very comfortable lifestyle for the children.

The lives of the parties and the children changed drastically in February of 1999 when Father decided to move to the basement of the home, thereby effectuating a separation between Father and Mother, while living under the same roof. Prior to separation, Brittany had become distant with Father. Once separation occurred, with Father living in basement, each child became separately entrenched with a relationship to one parent. Brittany became entrenched with Mother and Donald became entrenched with Father. While living in the basement, Father became more involved in his relationship with Donald. At the same time, Brittany grew farther away from Father and closer to Mother.

Donald became isolated from Mother. When he would arrive home from school, he would spend his evening exclusively with Father in the basement. He began to imitate Father relative to his relationship with Mother, including imitating insulting behavior that Father would display to Mother.

Father left the marital residence in April of 1999 under a temporary order entered as a result of a petition for protection from abuse filed by Mother. Since that time, Father has not returned to the residence, but has taken up residence with his parents, who live in an ample home a short distance from the marital home. Since Father left the marital home, Mother has continued to live in the marital home and Father continues to live in his parents' home.

The court entered a temporary custody order affording Mother primary physical custody but providing for

Father to have liberal partial custody. However, Brittany refuses to have anything to do with Father, will not visit with him nor go on any partial custody with Father, and will not talk to him either in person or by telephone. Brittany is completely estranged from Father and is entirely supportive of Mother in the divorce case, placing total blame on the father. Although Father is hurt by Brittany's attitude towards him, he does not take any affirmative action to attempt to repair the relationship between him and Brittany.

On the other hand, Donald is completely supportive of Father, blames Mother for the divorce, and he, like Brittany, does not wish his parents to reconcile.

Donald has exhibited tremendous animosity towards Mother. Donald has stated to Mother "I will burn you and I hate you." Donald is defiant towards Mother and refuses to be directed by her. Donald has complained to Father and to school authorities that Mother has physically abused him. Donald very clearly expresses his extreme desire to reside primarily with Father and minimally visit with Mother. Donald portrays Father in a totally positive light while portraying Mother in a very negative light.

Donald and Father share a common interest in sporting activities. Donald is athletic and enjoys sports. Father has also had a history of being involved in athletics and maintains that interest by coaching sporting teams in which Donald participates.

Both parties have been concerned with the schooling of the children and both parents have been involved in the children's homework. However, Donald does not see Mother as being supportive of his athletic interests nor

able to share or participate in those interests as does Father.

The parties and the children were evaluated by Dr. Michael Stern, a court-appointed psychologist.

Dr. Stern testified as a witness in this case and concluded that both of the parties have attempted to influence the children to side with them against the other parent and have inappropriately discussed issues with the children in an attempt to get them to reject the other parent in favor of them. Dr. Stern acknowledges that Donald's relationship with Mother has deteriorated and that, since separation, each of the children's loyalties to a specific parent have become more entrenched. The relationship between Brittany and Father has deteriorated to the point that Brittany refused to be with Father even during the evaluation process. Mother has a difficult time managing and directing Donald because of his attitude towards her. However, each parent views the relationship with the one child who has sided with him and her in a positive manner with normal challenges.

Dr. Stern recommended that each of the children be allowed to live with the preferred parent. In support of that recommendation, Dr. Stern noted that the children would be able to attend the same school and that it was not unusual for children at these ages to begin to share interests with the parent of the same sex. Dr. Stern concludes that Brittany is convinced of and has aligned herself with Mother's position regarding Father and, at the same time, Donald is convinced of and has aligned himself with Father's position regarding Mother. Dr. Stern further concludes that if either of the children were required to live with the nonpreferred parent, the probability of behavioral and emotional problems would increase.

It is noteworthy that Dr. Stern had the opportunity to reinterview the parties and the children within a matter of a few weeks prior to the first custody hearing. As a result, he was able to testify whether the conclusions that he reached as a result of the initial evaluation leading to a report concluded in June of 1999 were still valid. Dr. Stern confirmed that as a result of his ability to reinterview the parties and the children, that his conclusions continued to be valid.

Although Mother testified that there has been recently drastic improvement in the behavioral problems relating to Donald, she does acknowledge that he continues to desire to please Father. Donald testified and the court has observed that Donald continues to be unrelenting in his desire to reside primarily with Father and in portraying Mother in a negative fashion.

In custody disputes, the controlling question and paramount concern of the court is the best interest of the child, and all other considerations are deemed subordinate to the child's physical, intellectual, moral and spiritual well-being. See generally, *Warren v. Rickabaugh,* 410 Pa. Super. 431, 600 A.2d 218 (1991); *McMillen v. McMillen,* 529 Pa. 198, 602 A.2d 845 (1992); *Andrews v. Andrews,* 411 Pa. Super. 286, 601 A.2d 352 (1991); *In re Donna H.,* 412 Pa. Super. 205, 602 A.2d 1382 (1992); *Dorsey v. Freeman,* 438 Pa Super. 236, 652 A.2d 352 (1994).

The parents of a child begin a custody dispute on an equal footing and there are no presumptions in favor of either parent, as the court must make its determination based solely on the particular facts and circumstances of each case. The scale initially is weighed equally as to each parent; when the scale is tipped in favor of one of the parents, the other must come forward with evidence

to reverse the balance. *Sawko v. Sawko,* 425 Pa. Super. 450, 625 A.2d 692 (1993).

Where a child has a preference, such preference, although not controlling, is a factor to be considered so long as it is based upon good reasons; in assessing the weight to be accorded the child's preference, the child's maturity and intelligence are to be considered with increased weight being accorded the preference as the child grows older; where no reason, or a very inadequate reason for the preference is given for the child's choice, the court may choose to give no weight to that preference. *McMillen v. McMillen,* 529 Pa. 198, 602 A.2d 845 (1992).

The strong policy of the law is that unless compelling reasons indicate otherwise, siblings should be raised together. *Cyran v. Cyran,* 389 Pa. Super. 128, 566 A.2d 878 (1989). In order to meet the compelling reason standard, one must demonstrate that it is clearly necessary to separate the siblings. *In re Davis,* 502 Pa. 110, 465 A.2d 614 (1983).

In the case of *E.A.L. v. L.J.W.,* 443 Pa. Super. 573, 662 A.2d 1109 (1995), the court declared that the policy which favors raising siblings together is only one factor that the court must consider in child custody determinations and it is not controlling. Ultimately, it is what is in the children's best interests that must control, and that in certain cases, the children's best interests are best served by a custody order that brings about their separation. See *Mahoney v. Mahoney,* 354 Pa. Super. 585, 512 A.2d 694 (1986).

In the case sub judice, the court accepts and agrees with the conclusion of the court-appointed psychologist, Dr. Stern, that primary physical custody of each child should be awarded to the preferred parent of each child.

The court accords great weight to the findings and recommendations of the psychologist who has performed the custody evaluation in this case. A trial judge is required to consider uncontradicted expert testimony. See *Murphey v. Hatala,* 350 Pa. Super. 433, 504 A.2d 917 (1986). However, the court's own assessment is consistent with the recommendations and conclusions of Dr. Stern.

Brittany is closely bonded to Mother and is completely alienated from Father. Donald is closely bonded to Father and views being in his primary custody as an event which would make him "the happiest kid in the world," according to his own testimony. It may very well be that Donald has been heavily influenced by Father and the paternal grandparents. Nevertheless, the court is required to focus at this point on what is in the best interest of Donald. His attitude towards mother and his strong preference for Father, with whom he shares common interests, is not likely to change by forcing him to live, against his wishes, with Mother. It is more likely that if Donald is required to remain in the primary care of Mother, that the problems between them will continue to grow and Donald will become more resentful, thus increasing the disciplinary problems that Mother has encountered with Donald. Therefore, the court finds that there exists compelling reasons to separate the siblings in this case given the stated preference of each of them and the specific problems that each child has towards the nonpreferred parent.

Separation of Brittany and Donald is a legitimate consideration in this case for the additional reasons that Brittany is three years older than Donald, has a separate group of friends, does not share many common interests with

Donald and, furthermore, although Donald and Brittany are fond of each other, they are not extremely close. Their lack of closeness is understandable considering the difference in their ages, interests and the difference in their individual attitudes towards their parents. In any event, despite the fact that they may be living in separate homes, they will have ample opportunity to continue their sibling relationship in school, and by allowing for a liberal partial custody schedule so that Donald may continue to spend a good deal of time with his mother and sister.

In concluding that Donald should be in the primary physical custody of Father, the court is not in any way finding that Mother has any specific shortcomings that necessitate a change in custody. In fact, it appears to the court that Mother has been dedicated to the children and is an exemplary homemaker.

The deterioration of the family unit in this case has been especially tragic considering that it has led to each of the two children not only taking sides, but taking opposite sides between the parents. As tragic as this situation is, the court can only deal with the circumstances as they exist. The court cannot make a custody decision based upon which parent may have been responsible for the breakdown of the family unit; or, who is more culpable in causing or promoting conflict between the parties and the children. The court can only decide such issues based upon what is in the best interest of the children. Here, the court has concluded that it would be more harmful to Donald to force him to remain in the primary care of Mother than to allow him to have his stated preference where the credible evidence in the case, both in terms of expert testimony and the other evidence in the case, points to Donald having a better opportunity to

flourish and live a happier childhood if allowed to be in the primary physical custody of Father, with liberal partial custody with Mother.

The court shall enter a separate order consistent with this opinion.

## ORDER

And now, November 22, 1999, following the completion of custody hearings, it is ordered, adjudged and decreed as follows:

(1) Primary physical custody of Brittany Joan Watters is awarded to the plaintiff, Connie L. Watters.

(2) Primary physical custody of Donald R. Watters III is awarded to the defendant, Donald R. Watters Jr.

(3) The parties shall have shared legal custody of the children.

(4) As to each child, the out-of-custody parent shall have partial custody of the children on alternate weekends from Friday after school, or 10 a.m. if school is not in session, until Sunday at 6 p.m. Weekend partial custody shall be exercised in such a manner so that the children are always together on each weekend, if Brittany were to participate in the weekend partial custody. In addition, the plaintiff shall have partial custody of Donald each and every Tuesday from after school, or 10 a.m. if school is not in session, until 8:30 p.m., and every other Thursday, specifically the Thursday that precedes the weekend on which the plaintiff does not have partial custody, from after school, or 10 a.m. if school is not in session, until Friday when school starts or until 5 p.m. if school is not in session.

(5) During the summer months, the plaintiff shall have a period of three weeks of summer partial custody of

Donald which may be in addition to her regular weekend partial custody and consecutive therewith; provided, however, that such weeks must be exercised on a nonconsecutive basis as to each week of summer partial custody. The plaintiff shall give notice to the defendant, in writing, of the three weeks during which she will exercise partial custody by May 15 of each year. Defendant shall have the right to retain Donald for two nonconsecutive weeks of uninterrupted summertime custody, with notice of such weeks to be given by May 15 of each year. In the event of conflict, in even-numbered years, plaintiff's preference shall control, and in odd-numbered years, defendant's preference shall control.

(6) Brittany shall not be compelled to go with the defendant during his periods of partial custody with Brittany, but she shall be encouraged to do so.

(7) The parties shall alternate the holidays of Thanksgiving Day, New Year's Day, Memorial Day, Fourth of July and Labor Day, with the plaintiff to have the children for the holiday of Thanksgiving Day, with the times of custody or partial custody on such holidays to be from 10 a.m. until 8 p.m. Furthermore, in odd-numbered years, plaintiff shall have the children from Christmas Eve Day at 12 noon until Christmas Day at 12 noon and the defendant shall have the children from Christmas Day at 12 noon until December 26 at 12 noon. Holiday custody shall take precedence over regular and summer custody and partial custody.

(8) The plaintiff shall be responsible for all transportation connected with the exercise of her right of partial custody; provided, however, that she may send a designated representative to effectuate the transportation.

(9) Neither party shall remove the children from the jurisdiction of Lawrence County with the intent of permanently changing the residence of the children without the written consent of the other party or an order of court.

(10) The parties shall abide by the terms of the attached appendix to custody order, which is incorporated herein and made a part of this order of court.*

(11) The effective date of this order shall be Wednesday, December 1, 1999, and plaintiff's first weekend of partial custody with Donald shall be the weekend of December 3, 1999; therefore, plaintiff's first weeknight visitation period shall be Tuesday, December 7, 1999. Until December 1, 1999, the parties shall continue to comply with the existing order of court dated May 14, 1999, and any other order that is presently in effect between the parties.

(12) Each party shall have reasonable telephonic access to the child who is not in his or her primary physical custody, on a daily basis, but without being disruptive to the household of the custodial parent.

(13) The plaintiff, Connie L. Watters, and the child Donald R. Watters III, shall continue to engage in counseling and the defendant, Donald R. Watters, Jr., shall participate in such counseling as requested or recommended by the counselor. The parties are encouraged to involve Brittany in the counseling session with the goal of improving the relationship between Brittany and the defendant.

(14) The prothonotary shall exit a copy of this order to Norman A. Levine, Esquire, and Gabriel P. Cilli, Esquire.

---

* This appendix will not be reproduced in this publication.