J-A03019-25                    2025 PA Super 58

IN THE INTEREST OF: J.R., A MINOR   :   IN THE SUPERIOR COURT OF
                            :         PENNSYLVANIA
                            :

APPEAL OF: PHILADELPHIA         :
DEPARTMENT OF HUMAN SERVICES   :
                            :
                            :
                            :
                            :   No. 1507 EDA 2024

Appeal from the Order Entered May 31, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001128-2023

OPINION PER CURIAM:                     **FILED MARCH 13, 2025**

The Philadelphia Department of Human Services ("DHS") appeals from the order dismissing its petition for dependency of J.R. ("Child," born in September 2019) and returning legal and physical custody of Child to Ja.R. ("Mother"). We reverse and remand.

DHS received a General Protective Services ("GPS") report on December 20, 2023, alleging that Mother was having a mental health breakdown and was stating that Child's older sibling is not human and that both Child and his sibling do not deserve to be on this planet. **See** Application for Order of Protective Custody, 12/20/23, at 2 (unpaginated). The report further stated that Mother had a history of beating, punching, and kicking Child's sibling, and that the sibling was currently residing with the sibling's father. **Id.**

A DHS worker went to Mother's house and met with Mother. **Id.** During the interview, Mother initially answered DHS's questions coherently, stating that she had a history of using marijuana but that she had not used any that

day, and that she was prescribed medication but that she was not taking it. *Id.* During the conversation, Mother became extremely unfocused, began referring to DHS as her grandmother, started slurring her words, and continued to make incoherent statements. *Id.* Mother also made several lunging motions toward the DHS worker, causing the worker to call the police and leave the home to ensure her safety. *Id.* After the police arrived, Mother continued to make numerous threatening motions toward the DHS worker and told the police that her eyes were coming out of her head, and she could not see. *Id.*

DHS obtained an Order of Protective Custody ("OPC") on December 20, 2023, to remove Child from Mother's care. After a shelter care hearing, the court found that it would not be in Child's best interest to return to Mother's care. *See* Recommendation for Shelter Care - Amended, 12/22/23, at 1. The court lifted the OPC, transferred temporary custody of Child to DHS, and placed Child in kinship care with her maternal grandmother ("Maternal Grandmother"). *Id.* at 2. Mother was to have supervised line-of-sight, line-of-hearing visits weekly at the agency. The court's order also provided: "DHS is to do a forthwith assessment on [Child's father's ('Father's')] home, and conduct a clearance [on Father's] wife. Once all clears, [C]hild may be moved to [F]ather's home forthwith without further court order." *Id.*

Six days after receiving the OPC, on December 26, 2023, DHS held a Crisis/Rapid Response Family Meeting to discuss concerns of Mother's "unstable [mental health;] she is unable to care for or supervise [Child]

according to her needs." ***See*** Crisis/Rapid Response Family Meeting Report Conference, 12/26/23, at 1 (unpaginated). Father attended the meeting, but Mother did not. Father stated that before Mother's recent mental health difficulties, he and Mother had an informal arrangement where Child stayed with him every other day. ***Id.*** at 2 (unpaginated). Maternal Grandmother stated that she could continue to care for Child, but she did not feel comfortable with Father having unsupervised visits with Child because of his alleged drug history. ***Id.*** Subsequently, on December 28, 2023, DHS reunified Child with Father. ***See*** Continuance Order, 1/26/24.

DHS then filed a dependency petition for Child. The petition contained the above allegations about Mother. ***See*** Dependency Petition, 1/4/24, at ¶ 5(b). It additionally alleged that during her mental health breakdown, Mother was talking about taking her own life, as well as the lives of Child and Child's sibling. ***Id.*** The petition stated that Mother was hospitalized for mental health treatment for a week in September 2023 for choking Maternal Grandmother. ***Id.*** The petition also alleged that Father pled guilty to drug-related charges in January 2014 and July 2015. ***Id.*** at ¶ 5(h).

At a hearing on January 26, 2024, at which Child was present, Child appeared to have scratches and abrasions on her face. DHS made an oral motion for an OPC, which the court granted. N.T., 1/26/24, at 8-9. The court ordered that Child be removed from Father's care and returned to DHS's custody while DHS investigated how Child sustained her injuries. ***Id.*** 9-10. The court deferred adjudication. The court also denied Mother's request for

additional supervised contact with Child and kept her visits to supervised line-of-sight, line-of-hearing visits at the agency once per week. *Id.* at 7.

Following a shelter care hearing on January 31, 2024, the court found that it was not in Child's best interest to be returned to Father. *See* Recommendation for Shelter Care, 1/31/24, at 1. The court lifted the OPC and ordered Child's temporary commitment to DHS to stand. *Id.* at 2. The court ordered Mother and Father to have separate, supervised, line-of-sight, line-of-hearing visits at the agency, as arranged. *Id.* The court scheduled an adjudicatory hearing for February 12, 2024.

DHS filed an amended dependency petition, on February 7, 2024, repeating the same allegations about Mother that were set forth in the initial dependency petition. It further stated that an investigation of the injuries Child sustained while in Father's care was pending. *See* Dependency Petition, 2/7/24, at ¶ 5(j).

The adjudicatory hearing was then repeatedly continued. The hearing scheduled for February 12, 2024, was continued until March 15, 2024. On March 15, 2024, the court granted DHS's request for a continuance to conduct further investigation and rescheduled the hearing for April 19, 2024. However, the April 19, 2024 adjudicatory hearing was continued to May 31, 2024, due to DHS's witness's unavailability.

The adjudicatory hearing was held on May 31, 2024. At the hearing, counsel for DHS stated that "after further investigation the agency does not believe that it has dependency as to [Father]." N.T., 5/31/24, at 6. The DHS

investigator, Larbriah Powell, testified that Child told her that "she was running and playing with her two-year-old sibling at her father's home when she fell and that's how she sustained the marks and bruises." *Id.* at 8. Father corroborated that Child had fallen while playing with her sibling in his home. *Id.* at 8-9. The DHS investigator stated that a DHS nurse examined Child and determined that her injuries were consistent with Child's and Father's explanation. *Id.* at 8.

The Community Umbrella Agency worker, Nakeem Addison, testified that Father's home had been cleared, and Father was ready, willing, and able to have Child live with him. *Id.* at 12-13. He also noted that Mother had been consistent with her supervised visits, but Father had not. *Id.* at 12. When asked what Mother would need to do to be reunified with Child, Addison replied that while Mother was not court-ordered to do anything, "right now we just ask that [M]other continue parenting classes. She's in parenting classes right now. And just to follow up with I believe her mental health assessment. Just letting us know if she's been attending treatment." *Id.* at 13-14. The parties then stipulated that Father was ready, willing, and able to have Child live with him. *Id.* at 14-15. After this testimony, the court asked counsel for DHS if it had "[a]ny additional evidence," and she responded, "No, Your Honor." *Id.* at 14.

The court then discharged the petition of dependency, and the following exchange occurred:

THE COURT: The petition is discharged. Confirm custody in parents. Everybody is excused.

COURT CLERK: I'm sorry. Who get the child mom or dad? You're giving them separate (unintelligible).

THE COURT: I don't know who the child was taken from, but they haven't shown –

[MOTHER]: Me.

THE COURT: They haven't shown that either parent was un –

COURT CLERK: So you have to make the determination of who the child is going with today.

THE COURT: Who was the child taken from?

[MOTHER'S ATTORNEY]: From mom.

THE COURT: Actually, testimony was that child was in dad's custody at the time she was taken. Defer custody of dad.

[FATHER'S ATTORNEY]: Thank you.

[MOTHER]: My daughter lived with me. The dad was – he got her after we came her[e], and DHS took custody of my daughter. They took my daughter into custody.

THE COURT: The testimony was that child was in dad's custody at the time this happened. We're going to confirm custody to dad.

[FATHER'S ATTORNEY]: Thank you, Your Honor.

(Off the record)

 - - -

(On the record)

[MATERNAL GRANDMOTHER]: Father wants the child with mother.

[FATHER'S ATTORNEY]: No. Father wanted the child to go to him.

[MATERNAL GRANDMOTHER]:  No he don't. He don't want the baby. He's shaking his head no. He don't want her.

- 6 -

COURT CLERK: I don't know. Maybe they can have a conversation.

[MOTHER'S ATTORNEY]: What is going on? Do we need another date?

(Off the record)

  - - -

(On the record)

THE COURT: You want the child in mom's custody.

[FATHER]: I want her to go to her mom.

THE COURT: Confirm custody to mom. Everybody's excused.

[MOTHER'S ATTORNEY]: Thank you, Your Honor.

[DHS'S ATTORNEY]: On the record can I note my objection.

[CHILD ADVOCATE]: Note the objection of the Child Advocate. The record[']s still running.

THE COURT: Okay.

[DHS'S ATTORNEY]: Thank you.

*Id.* at 15-17.

DHS filed a notice of appeal the same day as the hearing.[1] It raises the following issue for our review:

> Did the trial court err as a matter of law and/or abuse its discretion in failing to conduct a comprehensive review of

_____

[1] After DHS filed its notice of appeal, it filed a motion with the trial court to mark the case as "active" and relist the matter for status hearings. The motion noted that Child "has remained in the custody of DHS by virtue of the automatic supersedeas associated with DHS's appeal of the order of adjudication and disposition." DHS's Motion to Mark Case as "Active" and Relist for Status of Appeal Hearing, 9/6/24, at ¶ 7. On September 12, 2024, the court granted the motion and reinstated the temporary commitment of physical and legal custody of Child to DHS. *See* Order, filed 9/13/24.

the identified issues in the case before returning [Child] to Mother's care, where it only resolved safety concerns regarding Father but did not address the significant safety concerns regarding Mother's mental health instability which led to [Child's] initial removal, as well as prior findings that it would not be in [Child]'s best interest to return to Mother's care, and orders for Mother to have only supervised, line-of-sight and line-of hearing contact with [Child] to ensure the child's safety?

DHS's Br. at 3-4.

Our standard of review for a dependency adjudication "requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re E.B.*, 83 A.3d 426, 430 (Pa.Super. 2013) (citation omitted). We therefore review for an abuse of discretion. *Id.* "[A] trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *In re K.D.*, 144 A.3d 145, 151 (Pa.Super. 2016).

DHS argues that the court erred "when it failed to conduct a comprehensive and searching inquiry of the record or to resolve known safety concerns about Mother's mental health instability before summarily returning [Child] to Mother's care." DHS's Br. at 14. DHS emphasizes that it initially removed Child from Mother's care, not Father's, due to concerns about Mother's mental health after she threatened to kill her children and herself. *Id.* It maintains that "[t]he trial court repeatedly endorsed this removal by

ordering [Child] to remain out of Mother's care; and only granting Mother supervised, line-of-sight and line-of-hearing visitation to ensure [Child's] safety." ***Id.***

DHS points out that in its Rule 1925(a) opinion, the court discussed the second GPS report and second OPC removing Child from Father's care in January 2024, but did not refer to the first GPS report or first OPC removing Child from Mother's care in December 2023. ***Id.*** at 12. DHS argues that the court improperly focused "only on later events involving [C]hild's [F]ather while ignoring identified concerns involving [M]other" and "failed its mandate to conduct a comprehensive review of the entire record and erroneously concluded that [Child] could safely return to Mother's care." ***Id.*** at 16. DHS maintains that had the court conducted its own comprehensive and searching inquiry into the record, as it was required to do, the court would have inquired about Mother's mental health status and her statements that she wanted to kill herself and her children. ***Id.*** at 22.

A child is a dependent child if he is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals." 42 Pa.C.S.A. § 6302. The question of whether a child is lacking proper parental care or control "encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." ***In re M.T.***, 101 A.3d 1163, 1173 (Pa.Super. 2014) (*en banc*) (citation omitted). The "burden of proof in a

dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets [the] statutory definition of dependency." *Id.* (citation omitted). Clear and convincing evidence is defined as evidence that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013) (citation omitted).

The "court in a dependency proceeding must conduct a comprehensive and searching inquiry into the record taking evidence from all interested parties and also from objective, disinterested witnesses." *Int. of K.B.*, ____ A.3d ____, 2025 WL 301023, at *4 (Pa.Super. filed Jan. 27, 2025) (*per curiam*) (citation and internal quotation marks omitted). This is so because "the utmost concern is for the children's welfare[.]" *Id.* (citation omitted). Indeed, a hearing judge's

> inquiry should be comprehensive and searching, and his decision supported by a full discussion of the evidence. If the hearing judge does not comply with these requirements, on appeal the case will be remanded for further proceedings. This is so because . . . [the scope of our review] is quite broad and, while we cannot nullify the fact-finding function of the hearing judge, we are not bound by a finding which has no competent evidence to support it.

*In re Donna H.*, 602 A.2d 1382, 1384 (Pa.Super. 1992) (citation and internal quotation marks omitted).

Here, the court found that the testimony at the adjudicatory hearing was that Child sustained the injuries while running and playing at Father's

house, and Child's injuries were consistent with this testimony. ***See*** Trial Court Opinion, filed 9/18/24, at 2. The court determined that Child's injuries were not serious enough to rise to the level of considering dependency, and pointed out that DHS's counsel even stated that "the agency [DHS] does not believe that it has dependency as to dad." ***Id.*** at 5. The court noted that there was no testimony at the adjudicatory hearing that Mother was inappropriate in any way; rather, the testimony was that Mother had not been asked or ordered by the court to do anything prior to reunification with Child, was consistent with visitation, and was attending parenting classes. ***Id.*** at 2, 6. The court further determined that Father was not a ready, willing, and able resource parent for Child because he had no desire to have Child in his custody and stated, "I want her to go with mom." ***Id.*** at 7. The court cited custody factors under 23 Pa.C.S.A. § 5328 and concluded that since no dependency issues were found at the adjudicatory hearing as to Mother and Mother was not an imminent risk to Child's safety and health, Mother was properly granted custody of Child. ***Id.*** at 3-7.

After a review of the record, we find that the court erred as a matter of law and abused its discretion in discharging the dependency petition. First, the court's reliance on the custody factors under the Custody Act as a basis for its decision is erroneous. This is a dependency case, not a custody case, and thus the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6387, applies. Further, there was no testimony at the adjudicatory hearing about Mother's ability to care for Child. The case was initiated by a GPS report due to concerns about

- 11 -

Mother's mental health. At the adjudicatory hearing, the parties stipulated that Father was ready, willing, and able to have Child live with him. After the court confirmed custody of Child to Father, Father made the unexpected request to have Child go with Mother, to which the court summarily agreed. However, the court was required to conduct a comprehensive and searching inquiry into the record to address known safety concerns about Mother's mental health and ability to care for Child before returning her to Mother's care. ***See Int. of K.B., supra***. We therefore reverse the trial court's order dismissing the dependency petition and remand for a complete adjudicatory hearing consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/13/2025